UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

URSULA SEYLER,

          Plaintiff,

vs.                       Case No. 2:07-cv-772-FtM-29DNF

WASHINGTON MUTUAL BANK, FA,

          Defendant.
_____

JP MORGAN CHASE BANK, NATIONAL ASSOCIATION,

      Third-Party Plaintiff,

vs.

URSULA SEYLER, EDWARD STRAUBHAAR, CHRISTINE SEYLER STRAUBHAAR, individually and as co-trustee of the Robert J. Seyler Revocable Trust Dated October 3, 2003 (as amended), ROBERT A. SEYLER, individually, as co-trustee of the Robert J. Seyler Revocable Trust Dated October 3, 2003 (as amended), and as personal representative of the estate of Robert J. Seyler, LYNNE DAY, KATHY SEYLER IACONO, WAYNE SEYLER, DEBORAH SEYLER SELMAN, DIANNE SEYLER CAPUTO, CHERYL SEYLER ATCHLEY, STEVEN SEYLER DIMMITT, RANDALL SEYLER AND DAWN SEYLER OLITSKY,

      Third-Party Defendants.
_____

**OPINION AND ORDER**

    This matter comes before the Court on Plaintiff Ursula Seyler's Motion for Summary Judgment (Doc. #69) filed on June 28, 2009. Defendant JP Morgan filed its opposition (Doc. #79) on July

10, 2009. Also before the Court is Defendant's Motion for Summary Judgment (Doc. #71) filed on June 30, 2009. Plaintiff filed her response (Doc. #78) on July 12, 2009. The parties also filed affidavits, depositions, and other exhibits in support of their respective briefs.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's

case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). The Court does not, however, weigh conflicting evidence or make credibility determinations. Hilburn, 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240 F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982)). Conclusory allegations based on subjective beliefs, however, are insufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).

## II.

On or about August 24, 1992, Ursula Seyler and Robert J. Seyler (now deceased) were married. At the time of their marriage, Robert J. Seyler held legal title to the premises located at 1055 Bald Eagle Drive, Marco Island, Florida 34145 (the Marco House). After Robert J. Seyler and Ursula Seyler were married, a succession of mortgages were secured by the Marco House that are at issue in this case. On or about October 27, 2003, Robert J. Seyler and Ursula Seyler borrowed $700,000 from Washington Mutual (WaMu) that

was secured by a mortgage on the Marco House. Both Robert J. Seyler and Ursula Seyler purportedly executed the note and $700,000 mortgage. The $700,000 mortgage was used, in part, to pay off a previous mortgage on the Marco House. On or about January 25, 2005, Robert J. Seyler allegedly executed another note and mortgage secured by the Marco House in the amount of $1,500,000 in favor of WaMu, now JP Morgan Chase Bank, National Association (JP Morgan). The $1,500,000 mortgage was used, in part, to pay off the outstanding balance on the $700,000 mortgage as well as other encumbrances on the Marco House.

Sometime in October 2005, Ursula Seyler learned that Robert J. Seyler transferred ownership of the Marco House to Christine Seyler Straubhaar, one of Robert J. Seyler's daughters, and her husband, Edward Straubhaar (the Straubhaars). Thereafter, on or about November 15, 2005, Ursula Seyler sued Robert J. Seyler and the Straubhaars for divorce and fraud. (See Doc. #4.) On or about January 20, 2006, Ursula Seyler's suit was settled when all parties signed a Settlement Agreement which included a provision that stated that Ursula Seyler agreed and understood there was a mortgage of over $1,500,000 that would need to be paid with the proceeds of the sale of the house. (Doc. #72-9, Ex. 12, ¶ 12.) The parties dispute several facts, including when Ursula Seyler learned her signature on the $1,500,000 mortgage was a forgery as well as most of the facts regarding the events that followed the

signing of the Settlement Agreement until the filing of the complaint.

On or about November 28, 2007, plaintiff Ursula Seyler filed the instant complaint against WaMu, now JP Morgan, alleging that the note and mortgage executed by her husband, Robert J. Seyler, on January 25, 2005 in the amount of $1,500,000 is void because her signature on the mortgage is a forgery. (Doc. #1.) Ursula Seyler requests a declaratory judgment cancelling the $1,500,000 mortgage. In JP Morgan's Amended Answer and Affirmative Defenses, (Doc. #56), it asserts the affirmative defenses of waiver, ratification, or in the alternative, equitable subrogation.

On or about March 5, 2009, JP Morgan filed an Amended Counterclaim and Third Party Complaint (Doc. #57), against Ursula Seyler, as well as twelve (12) other Third Party Defendants who may have an ownership interest in the Marco House. JP Morgan sues Ursula Seyler and the Third Party Defendants to foreclose the mortgage (Count I), for breach of the promissory note (Count II), and to reestablish a lost promissory note (Count III).

**III.**

There are cross motions for summary judgment before the Court. In Ursula Seyler's motion for summary judgment, she maintains that her signature on the mortgage is a forgery, and argues that a forged mortgage is void and thus should be declared a legal nullity. JP Morgan argues that even if the signature on the

mortgage is a forgery, Ursula Seyler failed to address JP Morgan's affirmative defenses of waiver and ratification.

In JP Morgan's motion for summary judgment, it argues that it should be entitled to summary judgment on the grounds that Ursula Seyler either waived her right to challenge the validity of her signature, ratified her signature, or both. Alternatively, JP Morgan asserts that it is entitled to summary judgment equitably subrogating the mortgage to the extent that proceeds from the $1,500,000 mortgage were used to pay the balance of a prior valid mortgage as well as real estate taxes on the Marco House. Ursula Seyler counters that there is no evidence that she either waived or ratified the signature on the $1,500,000 mortgage. Furthermore, while she agrees that equitable subordination is a recognized principle in Florida, Ursula Seyler argues that it should not apply in this case because she did not receive any proceeds of either the $700,000 mortgage or the $1,500,000 mortgage.

Upon review of the motions and responses, it is clear that numerous issues of fact preclude summary judgment in favor of any of the parties before the Court.

**A. Plaintiff's Motion for Summary Judgment:**

Ursula Seyler asserts that the she did not execute the $1,500,000 mortgage on the Marco House. (Doc. #72-5, p. 121; Doc. #69.) JP Morgan presented no evidence disputing that Ursula Seyler's signature on the $1,500,000 mortgage was a forgery.

However, JP Morgan asserts the affirmative defenses of waiver, ratification, or in the alternative, equitable subrogation. Although equitable estoppel principles can apply even to void instruments, <u>Zurstrassen v. Stonier</u>, 786 So. 2d 65, 68-69 (Fla. 2001), Ursula Seyler fails to even address JP Morgan's factual assertions regarding its affirmative defenses. Thus, there exists genuine issues of fact regarding whether Ursula Seyler either waived her right to contest the forgery or ratified her forged signature, or both. Accordingly, Ursula Seyler is not entitled to summary judgment declaring the $1,500,000 mortgage void.

**B. Defendant's Motion for Summary Judgment on its affirmative defense of Waiver:**

JP Morgan argues that the undisputed facts prove Ursula Seyler waived her right to challenge the validity of her signature on the $1,500,000 mortgage. However, an element of wavier is that the waiving party must possess all of the material facts. <u>Zurstrassen</u>, 786 So. 2d at 70. There is a question of material fact as to exactly when Ursula Seyler found out about the purportedly forged note and mortgage and whether she should have acted more diligently in investigating the mortgage documents. Consequently, JP Morgan is not entitled to summary judgment on the grounds of waiver.

**C. Defendant's Motion for Summary Judgment on its affirmative defense of Ratification:**

JP Morgan argues that the undisputed facts also prove that Ursula Seyler ratified her signature on the $1,500,000 mortgage.

Ratification requires that the party must have "full knowledge of all material facts and circumstances relating to the unauthorized act or transaction at the time of the ratification." <u>Deutsche Credit Corp. v. Peninger</u>, 603 So. 2d 57, 58 (Fla. 5th DCA 1992). Again, since there is a dispute as to when Ursula Seyler found out that her signature was a forgery, JP Morgan is not entitled to summary judgment on the grounds of ratification.

**D. Defendant's Motion for Summary Judgment on its affirmative defense of equitable subrogation:**

In the alternative, JP Morgan argues that even if Ursula Seyler's signature on the $1,500,000 mortgage is a forgery, it should be entitled to summary judgment equitably subrogating the $1,500,000 mortgage to the extent that the proceeds from the $1,500,000 mortgage were used to pay a prior valid mortgage as well as real estate taxes on the Marco House. Under Florida law, where equity demands it an equitable lien can be imposed on homesteads. <u>Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein</u>, 619 So. 2d 267, 270 (Fla. 1993). Equitable liens can be imposed even when the mortgage on the property was obtained fraudulently. <u>Id.</u> However, "equitable subrogation is not allowed if it works any injustice to the rights of others." <u>Suntrust Bank v. Riverside Nat. Bank of Florida</u>, 792 So. 2d 1222, 1227 (Fla. 4th DCA 2001) (internal citation omitted). In the instant case, the basic facts of who executed the $1,500,000 mortgage are still in dispute as well as the contours of the Third Party Defendants' rights to the Marco

House.  Consequently, the Court denies JP Morgan's summary judgment motion on the grounds of equitable subrogation.

Accordingly, it is now

**ORDERED:**

1. Plaintiff Ursula Seyler's Motion for Summary Judgment (Doc. #69) is **DENIED.**

2. Defendant JP Morgan's Motion for Summary Judgment (Doc. #71) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __4th__ day of December, 2009.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record